## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | Case No. 16-10627 (CSS) |
| SOLUTIONS LIQUIDATION LLC, | ) | |
| et al., | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| LIQUIDATION TRUST OF SOLUTIONS | ) | |
| LIQUIDATION LLC (F/K/A SDI | ) | |
| SOLUTIONS LLC) AND SOLUTIONS | ) | |
| OPCO HOLDINGS, LLC (F/K/A | ) | |
| SDI OPCO HOLDINGS, LLC), | ) | |
| THROUGH WILLIAM PEDERSON AS | ) | |
| LIQUIDATION TRUSTEE | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Adv. Pro. No.: 18-50304 (CSS) |
| | ) | |
| DAVID STIENES, MICHAEL | ) | |
| LEVENBERG, DOUGLAS BAKER, | ) | |
| DAVID P. TAYLOR, and PAUL G. | ) | |
| GARVER, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## OPINION

| | |
|---|---|
| **WOMBLE BOND DICKINSON (US) LLP** | **CKR LAW, LLP** |
| Matthew P. Ward | Marc J. Phillips |
| Ericka F. Johnson | William R. Firth, III |
| 1313 N. Market Street, Suite 1200 | 1000 N. West Street, Suite 1200 |
| Wilmington, DE  19801 | Wilmington, DE  19801 |
| -and- | |
| **BRAGER EAGEL & SQUIRE, P.C.** | Counsel for Defendants |
| David J. Stone | David Stienes, Michael |
| 885 Third Avenue, Suite 3040 | Lavenberg, David P. Taylor and |
| New York, NY  10022 | Paul D. Garver |

Counsel to Plaintiff Liquidation Trust
Of Solutions Liquidation LLC (f/k/a
SDI Solutions LLC) and Solutions
Opco Holdings, LLC (f/k/a/ SDI
Opco Holdings, LLC, by and through
William Pederson, as Liquidation Trustee

**HOGAN & MCDANIEL**
Daniel C. Kerrick
Garvan F. McDaniel
1311 Delaware Avenue
Wilmington, DE  19806

Counsel for Douglas Baker

Dated: October 21, 2019

Sontchi, C.J._____

## INTRODUCTION

Before the Court is the *Defendants' Motion to Dismiss the First Amended Complaint* (the "Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b), for its alleged failure to state a claim against the Defendants.  The Complaint, filed by plaintiff William Pederson, the Liquidating Trustee (the "Trustee") for the Liquidation Trust of Solutions Liquidation, LLC (f/k/a SDI Solutions, LLC) and Solution Opco Holdings, LLC (f/k/a Opco Holdings, LLC) ("SDI"), alleges breach of fiduciary duties by the Defendants regarding the acquisition of X7, as described in more detail below.  The Defendants moved to dismiss asserting that the Trustee did not plead adequate facts to establish plausible causes of action.

## JURISDICTION

The United States Bankruptcy Court for the District of Delaware (the "Court") has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).  This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).

The Court has the judicial authority to enter final judgements and orders in this adversary proceeding.

Venue is proper in the Court pursuant to 28 U.S.C. § 1409(a) because this is a proceeding relating to and arising under Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 and the above-captioned chapter 7 case. This action is brought as an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure, Rule 7001.

## PROCEDURAL BACKGROUND

On March 13, 2016 (the "Petition Date"), SDI Solutions LLC ("SDI Solutions"), a wholly owned subsidiary of SDI Opco Holdings, LLC ("SDI Opco" and together with SDI Solutions, the "Debtors"), filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code in this Court.[1]

On August 29, 2016, this Court entered its Findings of Fact, Conclusions of Law, and Order approving and confirming the *Debtors' Second Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation* (the "Plan").[2] The Plan created a Liquidation Trust, and Wayne P. Weitz was appointed as the Liquidation Trustee pursuant to the trust agreement (the "Liquidation Trust Agreement").[3] On February 2, 2018, Wayne P. Weitz resigned as Liquidation Trustee, and on February 21, 2018, this Court appointed

---

[1] Del. Bankr. 16-10627, D.I. 1. All references to the docket, cited as "D.I." refer to the bankruptcy proceeding, which this adversary proceeding as discussed *infra*, is related to.

[2] D.I. 393.

[3] *Id*. at ¶ 9(d).

William Pederson as successor Liquidating Trustee (the "Liquidation Trustee" or the "Trustee").[4]

Pursuant to the Plan, the "Liquidation Trust Assets" vested in the Liquidation Trust. Such assets included "Retained Causes of Action," which in turn included "Causes of Action against any current or former directors and officers of the Debtors, in their capacities as such … that (a) result in a final judgement against a current or former director or officer of the Debtors for either actual fraud, willful misconduct, or gross negligence …."[5] The Liquidation Trustee, on behalf of the Liquidation Trust, was vested with the exclusive right to investigate, prosecute, compromise and settle Retained Causes of Action.[6]

On March 12, 2018, the Liquidation Trustee commenced this Adversary Proceeding[7] against Defendants by filing a *Complaint* (the "Original Complaint") to recover damages caused by their alleged breaches of fiduciary duties.[8]  The Parties entered into a *Stipulation to File a First Amended Complaint* [9] and the *First Amended Complaint* (the "Complaint") was filed on December 11, 2018.[10]  Defendants filed their

---

[4]  D.I. 569, ¶ 3.

[5]  D.I. 393, ¶ 9(a).

[6]  *Id.* at ¶ 9(e).

[7]  Del. Bankr. Adv. Pro. No. 18-50304. All references to the Adversary Proceeding Docket will be cited as "Adv. D.I." and will refer to this Adversary Proceeding unless otherwise stated.

[8]  D.I. 581; Adv. D.I. 1.

[9]  Adv. D.I. 9.

[10]  Adv. D.I. 10.

*Motion to Dismiss the First Amended Complaint*[11] on January 25, 2019 along with a memorandum of law in support of the Motion.[12]   The Motion is fully briefed[13] and the Court heard oral argument on the Motion on August 20, 2019.[14]   At the conclusion of oral argument, the Court took the Motion under advisement.   This is the Court's ruling thereon.

## STATEMENT OF FACTS

### A.  Factual Background[15]

SDI Solutions was a privately held company headquartered in Chicago, Illinois, involved in the security system and IT industry. It provided advanced security system integration and managed services ranging from strategic advisory services on system selection to long-term operational and technical support for clients' physical security/IT systems and infrastructure.[16]

In 2012, the majority owner of SDI sold a controlling interest in the company to LLR Partners Equity Partners, Inc. and Monument Capital Group, Inc. (collectively, the

---

[11]  Adv. D.I. 14; Adv. D.I. 18.   Defendant Douglas Baker was not an original party to the Motion but subsequently joined.

[12]  Adv. D.I. 15.

[13]  Adv. D.I. 21 and 22.

[14]  *See* Transcript of Hr'g on Aug. 20, 2019 (D.I. 30).   The Transcript will be referred to herein as Tr. Page:line.

[15]  The facts are drawn from the allegations in the Complaint and documents integral to the Complaint, such as the SDI LLC Agreement.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)) (finding that, as a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings, but finding an exception when there is a document integral to or explicitly relied upon in the complaint); *see also In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n. 9 (3d Cir. 1993) (*citing Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993)) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

[16]  Adv. D.I. 10, ¶ 24.

"Parents").[17]  Subsequently, the Parents installed Defendants Stienes, Levenberg, and

Baker (collectively, the "Parent Defendants") as SDI's managers.[18]  At the time of the sale,

a Fourth Amended and Restated Limited Liability Company Agreement (the "SDI LLC

Agreement" or the "Agreement") was executed.[19]  Pursuant to the SDI LLC Agreement,

SDI's managers owed the company a duty of care to perform his or her duties "in good

faith and with a degree of care that an ordinarily prudent Person in a like position would

use under the circumstances."[20]  The SDI LLC Agreement also contained an exculpatory

clause that limited the liability of the managers (the "Exculpatory Clause"):

> Except in the case of bad faith, fraud, gross negligence, or
> willful misconduct, no Manager … shall be liable … for
> damages for any act taken or omissions by such Manager in
> connection with this Agreement or the conduct of business of
> the Company or any of its Subsidiaries.  Notwithstanding any
> other provision of this Agreement to the contrary, in
> accordance with Section 18-1101(c) and (e) of [the Delaware
> Limited Liability Company] Act, the fiduciary duties of each
> Manager and Member are eliminated to the fullest extent
> permissible by the [Delaware Limited Liability Company]
> Act; provided, that nothing contained in this Agreement shall
> eliminate the implied covenant of good faith and fair
> dealing.[21]

At the time of the sale, the Parent Defendants sought to add revenue growth to

SDI through targeted acquisitions.[22]  One such acquisition was SDI's 2013 $7.3 million

---

[17] *Id.* at ¶ 25.

[18] *Id.* at ¶ 1.

[19] Adv. D.I. 15, Exh. 1.

[20] *Id.* at ¶ 7.3.

[21] *Id.*

[22] D.I. 10, ¶ 27.

purchase of Orion Systems Group, LLC d/b/a X7 Systems Integration ("X7" or the "X7 Acquisition").[23]  As part of their due diligence process, the Parent Defendants hired Grant Thornton LLP ("Grant Thornton") to investigate X7, to review X7's financial records and internal controls and to advise the Parent Defendants on the proposed X7 Acquisition.[24]

Prior to the close of the X7 Acquisition, Grant Thornton provided the Parent Defendants with a "Financial and tax due diligence" report (the "Report").  As part of its Report, Grant Thornton pointed out specific "Key Issues" for the Parent Defendants to consider:

> **Interim reporting.**  We do not believe [X7's] interim financial statements accurately report the monthly financial results of [X7].  [X7] recognizes revenue when AR is recorded or cash is received . . .  Expenses are recorded when invoices are received and/or payroll is paid. There is no attempt to match revenues with expenses on an interim basis.  [X7] does not record prepaid expenses, accruals, or update the percentage of completion schedules during the interim months . . . .  This leads to significant volatility in [X7's] operating results and cash flows.

> **Percentage of completion accounting.**  The percentage of completion balances are only determined at year end by [X7's accountants] . . . .  Furthermore, Management does not regularly update the budgeted revenue and costs for change orders.  As such, [X7] cannot readily convert interim historical financial information to a basis consistent with the year end. This affects comparability of reported financial results.

> **EBITDA and cash activity analysis.**  Our analysis indicates that unadjusted EBITDA differs significantly from unlevered operating cash flow . . . .  We recommend [Parent Defendants] consider the impact of [X7's] relatively low cash conversion efficiency has on the ongoing funding needs of the Target.

---

[23] *Id.*

[24] *Id.* at ¶ 29.

**Lack of recorded inventory.**   [X7] does not maintain any inventory and purchases necessary equipment and materials required for each job as needed.  As such, [X7's] current assets are understated, and expenses are overstated by the amount of inventory on hand.

**Backlog.**  As of Mar13, [X7] had $6,652[,000] of projects where [X7] has been engaged, but work had either not commenced or is in-process and future revenue is expected to be generated.

**Significant AR aged > 90 days.**   [X7] had $324,[000], $572[,000] and $552[,000] of AR aged greater than 90 days representing 14.3%, 22.2% and 19.9% of net AR, respectively as of the Historical Balance Sheet Dates . . . [Parent Defendants] should consider the operating cash needs of financing AR for this length of time.[25]

Next, Grant Thornton made numerous recommendations to the Parent Defendants. After considering Grant Thornton's "Key Issues" and recommendations, the Parent Defendants closed on the X7 Acquisition.[26]  Upon the Closing, Defendants Taylor and Garver, two of X7's former owners, were retained as X7's Chief Executive Officer and President, respectively (the "Officer Defendants" and together with the Parent Defendants, the "Defendants").[27]

Unfortunately, the X7 Acquisition did not live up to the Defendants' expectations. Within months of the X7 Acquisition Closing, the Parent Defendants learned that X7 was losing cash and incurring losses.[28]  Specifically, SDI learned that almost $1 million of X7's existing contracts were running on a "loss" basis, meaning that X7 was losing money by

---

[25] *Id.* at ¶ 30.

[26] *Id.* at ¶ 34.

[27] *Id.* at ¶ 4.

[28] *Id.* at ¶ 38.

fulfilling its contracts.[29]  In early 2014, SDI engaged an investment banker to value certain of the intangible assets acquired in the X7 Acquisition.  The banker valued X7 at $3.07 million, meanwhile SDI had paid $7.3 million for X7 six months earlier.[30]  Also, SDI received a Goodwill Impairment Analysis from the banker, which determined that the fair value of SDI's adjusted enterprise value was less than SDI's carrying value, and specifically, that the goodwill was impaired by $12.4 million.[31]

Instead of generating revenue for SDI, the X7 Acquisition generated losses, resulted in SDI's reduced credit availability from its lender and pushed SDI into debt covenant violations for which SDI had to seek waivers and make capital infusions.[32] While SDI originally projected that X7 would generate $15 million of revenue in 2014, its projections were $5 million short, and by mid-2015, X7's projected annual revenue was $4.6 million below budget.  As a result of its deteriorating financial position, SDI descended into bankruptcy.[33]

**B.  The Parties' Arguments**

The Liquidation Trustee seeks to recover damages allegedly caused by the Defendants' breaches of their fiduciary duties as managers and officers of SDI. Specifically, the Liquidation Trustee presents two Claims in the Complaint (the "Claim"

---

[29] *Id.*

[30] *Id.* at ¶ 39.

[31] *Id.* at ¶ 40. ("SDI's consolidated financial statements for the year ended December 31, 2013 noted that SDI recognized a loss on impairment of goodwill of $12.4 million due to 'deterioration of the financial position and financial performance of a subsidiary'").

[32] *Id.* at ¶ 43.

[33] *Id.* at ¶ 44.

or the "Claims"): (Count 1) Breach of Duties against Stienes, Levenberg, and Baker for their decision to close the X7 Acquisition allegedly in bad faith, with gross negligence, and willful misconduct; and (Count 2) Breach of Duties against all Defendants for their alleged failure to establish proper policies and controls to address known problems at X7.

In Count One of the Complaint, the Liquidation Trustee represents that the Parent Defendants failed to perform adequate due diligence in connection with the X7 Acquisition Closing.  Specifically, the Trustee points to the fact that Grant Thornton recommended, in its Report, for the Parent Defendants to perform a "closing/opening balance sheet audit or review;" to "calculate actual working capital balances;" and "[c]onsider performing a physical inventory to understand the amount of inventory on hand and the current period income statement effect."[34]  The Trustee asserts that the Parent Defendants' failure to perform the recommended additional due diligence, prior to closing, caused the Parent Defendants to close on the X7 Acquisition while being uninformed about the value of the assets that they were causing SDI to acquire.[35]  Because of this alleged failure, the Trustee contends that their decision to close the X7 Acquisition was made in bad faith, with gross negligence, and with willful misconduct.[36]

In Count Two of the Complaint, the Liquidation Trustee asserts a Claim against all the Defendants for alleged breaches of their fiduciary duties.  The Trustee stresses that

---

[34] *Id.* at ¶ 31.

[35] *Id.* at ¶ 48.

[36] *Id.* at ¶ 47.

the Defendants failed to take adequate steps to address the known problems at X7.[37] Specifically, the Trustee asserts that after the X7 Acquisition closed, and after the Defendants confirmed that Grant Thornton's warnings about X7's financial condition and operational health were accurate, they still failed to take adequate steps to address the problems.[38]  Mainly, the Trustee argues that even after Defendants learned that over $1 million of X7's contracts were underestimated, they still failed to inform themselves fully of the extent of the underestimated contracts, which caused X7 to continue to enter into such underestimated contracts after the X7 Acquisition.[39]

Lastly, the Liquidation Trustee asserts that Defendants also failed to establish proper internal policies and controls to address the problems at X7 on a going-forward basis.[40]  The Trustee attributes the Defendants' failure to inform themselves of the operational deficiencies at X7, and their failure to enact appropriate policies and controls, including policies concerning contract estimation and review, as grounds for the Claim that Defendants failed to act with the degree of care that an ordinarily prudent person would use under the circumstances, and instead acted with gross negligence, bad faith, and willful misconduct, thus in violation of the SDI LLC Agreement and Delaware law.[41]

---

[37] *Id.* at ¶ 57.

[38] *Id.* at ¶¶ 58-61.

[39] *Id.*

[40] *Id.* at ¶ 60.

[41] *Id.* at ¶ 62.

In the Defendants' Motion, they argue that the Trustee failed to state a claim upon which relief can be granted.[42]  Specifically, the Defendants argue that the Complaint is devoid of allegations that suffice to show that Defendants' actions relating to the X7 Acquisition and the management of X7's post-acquisition operations reach the standard of gross negligence under Delaware law and were anything but valid exercises of Defendants' business judgement.[43]  In the alternative, Defendants argue that even if the enhanced scrutiny or entire fairness standards governed Defendants' actions, the Complaint still fails to allege that the X7 Acquisition or management of X7's post-acquisition operations were unfair or involved self-dealing.[44]

Further, the Defendants argue that the Exculpation Clause in the SDI LLC Agreement bars the Trustee's Claims against Defendants because the Complaint fails to allege facts that support the notion that any actions taken by the Defendants were made in bad faith, through fraud, with gross negligence, or willful misconduct or were contrary to the implied covenant of good faith and fair dealing.[45]

In response, the Trustee maintains the position that the Complaint states causes of action against all Defendants.[46]  Regarding the Claim against the Parent Defendants, the Trustee restates that the Parent Defendants breached their duties to SDI by failing to fully inform themselves about X7's financials, internal processes, and customer contracts.  The

---

[42] Adv. D.I. 14, ¶ 1.

[43] *Id.* at ¶ 2.

[44] *Id.*

[45] *Id.* at ¶ 3.

[46] Adv. D.I. 21, ¶ 2.

Trustee emphasizes that this demonstrates gross negligence by the Parent Defendants.[47] Also, the Trustee disputes that the Parent Defendants can rely on the business judgement rule because the SDI LLC Agreement controls the standard of care, and because the Trustee believes its allegations of gross negligence obviate the rule.[48]

Regarding the Claim against all the Defendants, the Trustee continues to argue that because the Defendants failed to address the known problems at X7 post-acquisition, they breached their duties to SDI.[49]  The Trustee's main argument rests upon the alleged fact that Defendants knew, shortly after closing, that X7's significant contracts were "poorly estimated" and, therefore, that X7 would lose money by fulfilling the contracts.[50] As a result of their alleged failure to take action to correct X7's processes for estimating contracts, X7 continued to enter into poorly estimated contracts and these contracts cost more to implement than SDI would collect on the contract.[51]  The Trustee stresses that the Defendants' failure to address this problem in X7's operations amounted to gross negligence in breach of the SDI LLC Agreement.[52]  It is important to note that the Trustee also points out that the Exculpatory Clause in the SDI LLC Agreement only applies to managers, and thus, does not apply to Officer Defendants Garver or Taylor, as they were

---

[47] *Id.* at ¶ 3.

[48] *Id.* at ¶ 4.

[49] *Id.* at ¶ 5.

[50] *Id.*

[51] *Id.*

[52] *Id.*

not managers of the company.[53]  The Trustee asks this Court to either deny Defendants'

Motion or to afford the Trustee an opportunity to amend its Complaint.

In reply,[54] the Defendants contend that the Opposition fails to allege any facts that

Defendants' conduct was grossly negligent or that they deviated from the ordinary

standard of care.[55]  The Defendants maintain their position that they were in fact

adequately informed of X7's inner workings by way of the Report, and that the

Defendants made a business decision to proceed with the X7 Acquisition nonetheless.[56]

They ask this Court to dismiss the Complaint with prejudice.

## ANALYSIS

**A.    Standard Regarding Sufficiency of Pleadings When Evaluating a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted.**

The Defendants move this Court to dismiss the Liquidation Trustee's Complaint

for its alleged failure to state a Claim.[57]  Thus, this Court must decide whether the facts

as pled in the Complaint are sufficient to support the Trustee's Claims that the

Defendants breached their fiduciary duties to SDI.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable

to this Adversary Proceeding through Rule 7012 of the Federal Rules of Bankruptcy

Procedure, the Court may grant a motion to dismiss "'only if, accepting all well-pleaded

---

[53]  *Id.* at ¶ 27.

[54]  Defendant Douglas Baker joined in the Reply Memorandum.  *See* Adv. D.I. 23.

[55]  Adv. D.I. 22, ¶ 2.

[56]  *Id.* at ¶ 7.

[57]  Adv. D.I. 14.

allegations in the complaint as true, and viewing them in the light most favorable to the

plaintiff, plaintiff is not entitled to relief.'"[58]  Fundamentally, "a motion under Rule

12(b)(6) serves to test the sufficiency of the factual allegations in the plaintiffs

complaint."[59]  As a threshold matter, "[t]o survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim [for] relief that is

plausible on its face.'"[60]  A claim is facially plausible "'when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged.'"[61]  Determining whether a complaint is facially plausible is

"a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense."[62]

　　　The Third Circuit has outlined a two-part analysis for courts to follow in order to

determine the sufficiency of a complaint, instructing courts that:

> [f]irst, the factual and legal elements of a claim should be
> separated.  The [court] must accept all of the complaint's well-
> pleaded facts as true, but may disregard any legal
> conclusions.   Second, the [court] must then determine

---

[58]  *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000) (*quoting In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (*citing Bartholomew v. Fischl*, 782 F.2d 1148, 1152 (3d Cir.1986))).

[59]  *Lipscomb v. Clairvest Equity Partners Ltd. P'ship* (*In re LMI Legacy Holdings, Inc.*), Case No. 13-12098 (CSS), 2017 WL 1508606 at *3 (Bankr. D. Del. 2017) (*citing Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993)).

[60]  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

[61]  *Six Flags, Inc. v Parc Management, LLC* (*In re Premier Intern. Holdings, Inc.*), 443 B.R. 320, 329 (Bankr. D. Del. 2010) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (further citations omitted)).

[62]  *Iqbal*, 556 U.S. at 679.  "It is the conclusory nature of [plaintiff's] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."  *Id.* at 681.

whether the facts alleged … are sufficient to show that the plaintiff has a plausible claim for relief.[63]

The Third Circuit has also instructed that "[s]ome claims will demand relatively more actual detail to satisfy this standard, while others require less."[64]

## B. Breach of Duties

The Complaint sets forth two counts centered on one idea: Defendants' decision to acquire X7 and their failure to address known problems post-acquisition constituted "gross negligence" and "bad faith" in violation of their duties under the SDI LLC Agreement and Delaware law.[65]  As discussed *supra*, the Defendants argue that the Liquidation Trustee's Complaint fails to plead facts stating any plausible Claims that they breached any duties owed to SDI under the SDI LLC Agreement or Delaware law.[66] Specifically, the Defendants' Motion states that the Complaint does not contain any allegations that would suffice to show that Defendants' actions relating to the X7 Acquisition and the management of X7's post-acquisition operations reach the standard of gross negligence under Delaware law.[67]  They also contend that the Trustee does not allege in the Complaint that Defendants' actions were anything but valid exercises of their business judgement, and in the alternative, argue that even if the enhanced scrutiny

---

[63] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 677); *see also Khatib v. Sun-Times Media Grp., Inc. (In re Chicago Newspaper Liquidation Corp.)*, 490 B.R. 487, 493 (Bankr. D. Del. 2013) (citations omitted).

[64] *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 320 n. 18 (3d Cir. 2010) (citations omitted).

[65] Adv. D.I. 21.

[66] Adv. D.I. 15, ¶ 2.

[67] *Id.*

or entire fairness standards apply, the Complaint fails to allege that the X7 Acquisition or management of X7's post-acquisition operations were unfair or involved self-dealing.[68]

### 1. Claim for Breach of Duties Against Parent Defendants
#### a. Breach of Duty of Care

The Liquidation Trustee's first Claim is against solely the Parent Defendants for their alleged breach of the duty of care owed to SDI by causing SDI to acquire X7 despite not being fully informed as to crucial matters concerning X7.[69]

Pursuant to the SDI LLC Agreement, which governs this issue,[70] the applicable standard of care is set forth as follows:

> The **duty of care** of each Manager in the performance of such Person's duties to the Company and the other Members is **limited to the performance of such duties in good faith and with that degree of care that an ordinarily prudent Person in a like position would use under similar circumstances**.[71]

The SDI LLC Agreement limits the Parent Defendants' liability  for a breach of the duty of care"[e]xcept in the case of bad faith, fraud, gross negligence, or willful misconduct…."[72] Thus, according to the SDI LLC Agreement, the Parent Defendants may only be held liable for a breach of the duty of care if they acted in bad faith, committed fraud, were grossly negligent, or acted with willful misconduct.

---

[68] *Id.*

[69] Adv. D.I. 10; Adv, D.I. 21.

[70] *A&J Capital Inc. v. Law Office of Krug*, C.A. No. 2018-0240-JRS, 2018 WL 3471562, at *5 (Del. Ch. July 18, 2018) (noting that the Delaware Limited Liability Company Act affords parties broad discretion in drafting LLC agreements and ensures that such agreements will be honored and given maximum effect by a reviewing court).

[71] Adv. D.I. 15, Exh. 1, ¶ 7.3.

[72] *Id.*

Accordingly, the inquiry here is to determine whether the Trustee has adequately plead facts to show that Defendants were grossly negligent in connection with their decision to acquire X7, sufficient to establish a breach their duty of care under the SDI LLC Agreement.[73]

### i.    Gross Negligence

Under both the SDI LLC Agreement and Delaware law, a plaintiff cannot "prove a breach of the duty of care without a showing of gross negligence."[74]  While the SDI LLC Agreement does not define the term "grossly negligent," Delaware's default definition of gross negligence is well-established; the Delaware Supreme Court has defined gross negligence as a "higher level of negligence representing an extreme departure from the ordinary standard of care."[75]  To establish gross negligence, "a plaintiff must plead … that the defendant was 'recklessly uniformed' or acted 'outside the bounds of reason.'"[76] This Court has observed that the Delaware Court of Chancery has found that "gross negligence may be pled by a complaint alleging that a board undertook a major acquisition without conducting due diligence, [or] without retaining experienced

---

[73] *See generally* Adv. D.I. 10.  While the Trustee alleges that the Parent Defendants' actions in approving the X7 Acquisition constituted bad faith, gross negligence, and willful misconduct, the Trustee only focuses on gross negligence and does not allege any facts to support an allegation of bad faith or willful misconduct. Therefore, the allegations of bad faith and willful misconduct are conclusory and may be disregarded by this Court when reviewing a 12(b)(6) motion.

[74] *Official Comm. of Unsecured Creditors v. Goldman Sachs Credit Partners L.P. (In re Fedders North America Inc.),* 405 B.R. 527, 539 (Bankr. D. Del. 2009) (citation omitted).

[75]  *A & J Capital, Inc. v. Law Office of Krug,* No. CV 2018-0240-JRS, 2019 WL 367176, at *12 (Del. Ch. Jan. 29, 2019), *judgment entered sub nom. Capital, Inc. v. Law Office of Krug* (Del. Ch. 2019) (internal quotation marks, citations and footnotes omitted).

[76]  *A & J Capital, Inc. v. Law Office of Krug*, No. CV 2018-0240-JRS, 2019 WL 367176, at *12 (Del. Ch. Jan. 29, 2019), *judgment entered sub nom. Capital, Inc. v. Law Office of Krug* (Del. Ch. 2019) (internal quotation marks, citations and footnotes omitted).

advisors ….”[77]  Also, this Court has previously stated that “[t]he exact behavior that will constitute gross negligence varies based on the situation, but generally requires directors and officers to fail to inform themselves fully and in a deliberate manner.”[78]

The Trustee's Complaint asserts that the Parent Defendants were grossly negligent, and thus, breached their duty of care by way of their decision to close on the X7 Acquisition without conducting reasonable due diligence in connection with the Acquisition.[79]  As factual support, in the Trustee's Opposition, the Trustee points this Court to consider various case law, however, the case law is inapposite to the Trustee's position.  In *In re Fedders North America Inc.*,[80] this Court found that the Plaintiff sufficiently pled facts to support a claim for the breach of duty of care by pleading facts that indicated Fedders' directors approved a loan transaction with various lenders without conducting the due diligence typically conducted by a borrower.[81]  Such facts included that Fedders never obtained a financial assessment verifying that it would be able to comply with covenants contained in the financing, and that the financing agreements did not require a “clean” opinion by Fedders' auditors, which the Plaintiff alleged was a typical requirement for such transactions.[82]

---

[77]  *Fedders*, 405 B.R. at 539 (internal quotation marks omitted; *quoting Trenwick America Litigation Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 194 (Del. Ch. 2006), *aff'd*, 931 A.2d 438 (Del. 2007)).

[78]  *Id.* (citations omitted).

[79]  Adv. D.I. 10, ¶ ¶ 47,48.

[80]  405 B.R. 527 (Bankr. D. Del. 2009)

[81]  *Fedders*, 405 B.R. at 542.

[82]  *Id.* (Nonetheless, Judge Shannon dismissed the claim because Fedders' certificate of incorporation exculpated Fedders' directors from paying monetary damages for breaching the duty of care).

Likewise, the Trustee directs this Court to consider *Trenwick America Litigation Trust v. Ernst & Young, L.L.P.*[83]  In *Trenwick*, the Delaware Court of Chancery held that a complaint pleading facts including, for example, that a "board undertook a major acquisition without conducting due diligence, without retaining experienced advisors, and after holding a single meeting …." would be sufficient to plead a claim for gross negligence.[84]  However, the *Trenwick* Court found that the Trustee had not met its pleading burden to state a claim for a breach of the duty of care because the Trustee simply alleged that "a majority independent board undertook a business strategy that was 'all-consuming and foolhardy' and that it turned out badly … and thereby s[ought] to have the [C]ourt infer that the later failure resulted from a grossly deficient level of effort…."[85]

Another case that is distinguishable on its facts is *Metro. Life Ins. Co. v. Tremont Group Holdings, Inc.*[86]  In *Metro. Life Ins. Co.*, the Delaware Chancery Court addressed whether a failure to "heed to 'warning signs'" satisfied the requirement of gross negligence.[87]  While no Delaware case had addressed the issue before, the Chancery Court found *Forsythe v. ESC Fund Management Co.*,[88] instructive.  In *Forsythe*, the Plaintiff's

---

[83]  906 A.2d 168 (Del. Ch. 2006) *aff'd* 931 A.2d 438 (Del. 2007).

[84]  *Trenwick*, 906 A.2d at 194.

[85]  *Id.* (footnote omitted).

[86]  *Metro. Life Ins. Co. v. Tremont Grp. Holdings, Inc.*, No. CIV.A. 7092-VCP, 2012 WL 6632681 (Del. Ch. Dec. 20, 2012).

[87]  *Metro. Life Ins. Co. v. Tremont Grp. Holdings, Inc.*, No. CIV.A. 7092-VCP, 2012 WL 6632681, at *8 (Del. Ch. Dec. 20, 2012).

[88]  *Forsythe v. ESC Fund Mgmt. Co. (U.S.)*, No. CIV.A. 1091-VCL, 2007 WL 2982247, at *1 (Del. Ch. Oct. 9, 2007).

complaint had adequately pled facts to support gross negligence based on failing to heed

to warning signs.[89]  The complaint included allegations that the general partner had failed

to inquire into investment decisions, ask for any of the underlying material, or question

anyone regarding the investments being made.[90]  Accordingly, the *Metro. Life Ins. Co.*

Court decided that Plaintiffs adequately alleged conduct that was "more egregious than

at issue in *Forsythe*" by pleading facts showing that the defendant "*willfully* and

*consciously* ignored warning signs about those investments."[91]

　　Unlike the Trustee in *Fedders*, who adequately plead that the directors failed to

pursue typical due diligence in approving a loan transaction by failing to obtain a

financial advisement, the Trustee here pleads that the Parent Defendants did in fact

perform their due diligence by hiring Grant Thornton to investigate and advise them

about the X7 Acquisition.[92]  The Trustee offers an argument that, although the Parent

Defendants conducted their due diligence by hiring Grant Thornton, their due diligence

was negated because Grant Thornton's Report informed them that the financial and other

information they were relying on to acquire X7 was unreliable, and therefore, they were

---

[89]  *Forsythe v. ESC Fund Mgmt. Co. (U.S.)*, No. CIV.A. 1091-VCL, 2007 WL 2982247, at *7 (Del. Ch. Oct. 9, 2007) (*citing  Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006)) ("As the Delaware Supreme Court recently held, where such a system is implemented, directors will be potentially liable for breach of their oversight duty only if they ignore 'red flags' that actually come to their attention, warning of compliance problems.").

[90]  *Metro. Life Ins. Co. v. Tremont Grp. Holdings, Inc.*, No. CIV.A. 7092-VCP, 2012 WL 6632681, at *8 (Del. Ch. Dec. 20, 2012) (citing *Forsythe v. ESC Fund Mgmt. Co. (U.S.)*, No. CIV.A. 1091-VCL, 2007 WL 2982247, at *4 (Del. Ch. Oct. 9, 2007)).

[91]  *Metro. Life Ins. Co. v. Tremont Grp. Holdings, Inc.*, No. CIV.A. 7092-VCP, 2012 WL 6632681, at *8 (Del. Ch. Dec. 20, 2012) (emphasis supplied).

[92]  Adv. D.I. 10, ¶ 29.

entirely uninformed as to what they were acquiring.[93]  This argument is unpersuasive

and there are no facts plead to support this allegation.  The Parent Defendants sought the

Grant Thornton report in order to be adequately informed of X7's condition – good or

otherwise.  Certainly, conducting the appropriate due diligence prior to closing on an

acquisition cannot amount to gross negligence.

Similar to *Trenwick*, the Trustee here faces the same obstacles.  There are no facts

indicating that the Parent Defendants took on a major acquisition without conducting the

appropriate due diligence, without hiring experienced advisors, or did so after one

meeting.  Rather, the Parent Defendants conducted the appropriate due diligence by

hiring experienced advisors and asking for recommendations in order to consider the

Acquisition.  Like the Trustee in *Trenwick*, the Trustee here simply alleges that the Parent

Defendants undertook a business strategy that ended badly.[94]  This does not amount to

gross negligence.[95]

The Trustee's argument is best supported by *Metro. Life Ins. Co.*, however, the

argument remains unconvincing.  Unlike the Plaintiff there, who plead that Tremont not

only failed to oversee its investments with Bernie Madoff, but also willfully and

consciously ignored warning signs about those investments, the Liquidation Trustee here

---

[93]  *Id.* at ¶ 49.

[94]  *Id.* at ¶ 5.

[95]  *Trenwick*, 906 A.2d at 218 (finding the "mere fact of a business failure did not mean plaintiff could state claims against the directors, officers, and advisors on the scene just by pointing out that their business strategy did not pan out").

alleges that Parent Defendants ignored warning signs but points to no factual support.[96] Rather, the Trustee's Complaint states that the Parent Defendants became aware of numerous red flags and warnings from the Grant Thornton Report, but does not provide any facts to support its position that the Parent Defendants ignored these warning signs, rather than considered them and made a business judgement that, unfortunately, did not achieve their expected results.

In an attempt to provide additional factual support, the Trustee points to Grant Thornton's Report.  In that Report, quoted above, Grant Thornton found and advised the Parent Defendants about several problems at X7 which the Defendants should address *following the closing*.[97]  The factual support from the Report, therefore, harms the Trustee's position.  The Report advises the Parent Defendants as to various steps they should take following the X7 Acquisition closing; meanwhile the Trustee's Claim is for a breach of the duty of care with respect to the Parent Defendants' decision to close on the X7 Acquisition to begin with.[98]  The Trustee states that the Parent Defendants failed to adequately investigate X7, including causing it to undergo a full audit,[99] however, Grant Thornton advised them to do so only after closing on the Acquisition.[100]

Because the Complaint is devoid of any factual support for the Trustee's allegation and case law is inapposite to the Trustee's position that the Parent Defendants were

---

[96] Adv. D.I. 10, ¶ 28.

[97] *Id.* at ¶ 31.

[98] *Id.* at ¶ 49.

[99] *Id.*

[100] *Id.* at ¶ 31.

grossly negligent in deciding to close on the X7 Acquisition, the Trustee has not met its pleading burden with respect to a Claim for the breach of duty of care.

### b. Breach of Duty of Loyalty and Good Faith[101]

Although the Liquidation Trustee does not explicitly set forth a Claim for a breach of the duty of loyalty and good faith,[102] the Defendants' Motion addresses the argument,[103] and the Trustee's Opposition offers a response.[104]  Therefore, for purposes of completeness, the Court will address the issue as though it was pled in the Complaint.

Under Delaware Law, "'[t]o state a legally sufficient claim for breach of the duty of loyalty, plaintiffs must allege facts showing that a self-interested transaction occurred, and that the transaction was unfair to the plaintiffs.'"[105]  In other words, "'acts taken in bad faith breach the duty of loyalty.'"[106]  A fiduciary acts in bad faith when, among other things, he takes or fails to take any action that demonstrates a "'faithlessness or lack of true devotion to the interests of the corporation and its shareholders.'"[107]

---

[101] The SDI LLC Agreement eliminates the Parent Defendants' fiduciary duties of loyalty and good faith, and so, even if the Trustee's Complaint states a Claim against them for breach of such duties, which *infra*, he does not, the Claim would be barred by the Agreement. I am only addressing this argument in detail because the Defendants spend a significant amount of time talking about this Claim in their Motion.

[102] Adv. D.I. 10 (The Trustee labels the Claims as: "Count 1: Breach of Duties – X7 Acquisition Against Stienes, Levenberg, and Baker"; and "Count 2: Breach of Duties Against All Defendants" without elaborating or clarifying which duties were specifically breached).

[103] Adv. D.I. 15, ¶ 16.

[104] Adv. D.I. 21, ¶¶ 26, 29.

[105] *Fedders*, 405 B.R. 527 at 540 (*quoting Joyce v. Cuccia*, No. CIV.A. 14953. 1997 WL 257448, at *5 (Del.Ch. May 14, 1997)).

[106] *Bridgeport Holdings Inc. Liquidating Trustee v. Boyer (In re Bridgeport Holdings, Inc.)*, 388 B.R. 548, 564 (Bankr. D. Del. 2008) (*quoting Ryan v. Gifford*, 918 A.2d 341, 357 (Del.Ch. 2007) (*citing Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006))).

[107] *Id.* (*quoting Ryan v. Gifford*, 918 A.2d 341, 357 (Del.Ch. 2007)).

The duty to act in good faith is a "subsidiary element of the duty of loyalty."[108] The Delaware Supreme Court has identified three examples of conduct that may establish a failure to act in good faith:

> First, it has held that such a failure may be shown where a director intentionally acts with a purpose other than that of advancing the best interests of the corporation. Second, it has held that a failure may be proven where a director "acts with the intent to violate applicable positive law." Third, it has held that a failure may be shown where the director intentionally fails to act in the fact of a known duty to act, demonstrating a conscious disregard for his duties…[T]here "may be other examples of bad faith yet to be proven or alleged, but these three are the most salient."[109]

The Defendants properly state that the Complaint is imprecise about the duty or duties that the Trustee contends Defendants breached.[110] The Court finds that there is absolutely no factual support whatsoever in the Complaint to support a Claim for a breach of the duty of loyalty or the duty of good faith.[111]

With respect to a breach of the duty of loyalty, the Complaint is devoid entirely of factual support to establish that the transaction was self-interested. Likewise, the Complaint also fails to state a Claim for a beach of the duty of good faith. The Complaint mentions that the Parent Defendants failed to take "necessary steps to diligence X7's true condition … in the face of a known duty to act in SDI's best interest and in conscious

---

[108] *Fedders*, 405 B.R. 527 at 540 (*citing Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006)).

[109] *Id.* (*citing and quoting In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 67 (Del. 2006) (citation omitted)).

[110] Adv. D.I. 15, ¶ 11.

[111] *See generally* Adv. D.I. 10.

disregard of such duties."[112]  However, there is no factual support provided whatsoever to forward this allegation past the point of being conclusory. As discussed previously, the Parent Defendants did take necessary steps to diligence X7's condition – they hired Grant Thornton to investigate and advise them precisely about X7's condition.

Viewing the Complaint most favorable to the Trustee, it is not reasonable to infer that the Parent Defendants breached a duty of loyalty or good faith. Since conclusory statements are insufficient to state a claim,[113] the Trustee has not met the pleading burden to establish a Claim for a breach of the duty of loyalty or good faith.

### i.    Business Judgement Rule Review

The Parties disagree as to whether the Parent Defendants are entitled to having their actions reviewed under the business judgement standard.  The Defendants seek dismissal of the Complaint for a flurry of reasons, including the business judgment rule.[114]  The Trustee disputes that the Parent Defendants are entitled to being reviewed under the business judgment rule because the SDI LLC Agreement does not adopt the business judgment standard.[115]

On a motion to dismiss, the business judgment rule dictates that a plaintiff must allege facts that "raise a reasonable inference that the board of directors either breached its duty of loyalty or duty of care with regard to the transaction at issue."[116]  If a plaintiff

---

[112] *Id*. at ¶ 49.

[113] *Think3 Litigation Trust v. Zuccarello* (*In re Think3, Inc.*), 529 B.R. 147, 169 (Bankr. W.D. Tex. 2015).

[114] Adv. D.I. 15, ¶ 18.

[115] Adv. D.I. 21, ¶ 29.

[116] *Xtreme Power Plan Trust v. Schindler (In re Xtreme Power Inc.)*, 563 B.R. 614, 642 (Bankr. W.D. Tex. 2016).

fails to satisfy this burden, "a court should decline to substitute its judgment for the decision of the board, provided the board's decision can be attributed to a rational business purpose."[117]  Under Delaware law, the business judgment rule "presumes that 'in making a business decision[,] the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company.'"[118]  "Those presumptions can be rebutted if the plaintiff shows that the directors breached their fiduciary duty of care or loyalty or acted in bad faith."[119]  Once that is shown, "the burden shifts to the defendants to demonstrate that the challenged act or transaction was entirely fair to the corporation and its shareholders."[120]

The Trustee's argument, that the Parent Defendants cannot rely on the business judgment standard of review because the SDI LLC Agreement governs the standard of care, is misguided.[121]  The business judgement rule is a standard of review that courts use to evaluate director decision making;[122] the SDI LLC Agreement sets forth the standard

---

[117] *Id.* (*citing Gantler v. Stephens*, 965 A.2d 695, 706 (Del. 2009) (citations omitted)).

[118] *In re Walt Disney Co. Derivative Litigation*, 906 A.2d 27, 52 (Del. 2006) (*quoting Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984))

[119] *Id.*

[120] *Id.* (*citing Emerald Partners v. Berlin*, 787 A.2d 85, 91 (Del. 2001); *Brehm v. Eisner*, 746 A.2d 244, 264 n. 66 (Del. 2000) ("Thus, directors' decisions will be respected by courts unless the directors are interested or lack independence relative to the decision, do not act in good faith, act in a manner that cannot be attributed to a rational business purpose or reach their decision by a grossly negligent process that includes the failure to consider all material facts reasonably available.")).

[121] Adv. D.I. 21, ¶ 25.

[122] Adv. D.I. 15, ¶ 15 (*citing Fedders*, 405 B.R. at 540).

of care that the directors must adhere to when making their decisions.  Accordingly, one is not dispositive of the other.[123]

As discussed in great detail *supra*, the Trustee has failed to adequately plead facts to demonstrate that the Parent Defendants breached their duty of care, much less their duty of loyalty or good faith in order to rebut the presumption of the business judgment rule.  Both the Defendants' Motion, as well as the Trustee's Complaint, allege that the Parent Defendants were looking to grow its revenue by way of acquisitions.[124]  Their decision to acquire X7 is thus consistent and related to their rational business purpose. Thus, the Parent Defendants are entitled to the business judgment standard of review.[125]

In sum, the Court will grant the Parent Defendants' Motion with respect to Count One of the Complaint.

---

[123]  The Trustee points to *Wenske v. Blue Bell Creameries, Inc.*, No. CV 2017-0699-JRS, 2018 WL 3337531 (Del. Ch. July 6, 2018), *reargument denied*, No. CV 2017-0699-JRS, 2018 WL 5994971 (Del. Ch. Nov. 13, 2018), to support its allegation that the business judgment rule is inapplicable where the entity's contractual agreement provides a standard of care, however, that is not what this case law suggests.  This case simply states that while conduct may not be actionable under Delaware law itself, a contract may provide for a heightened standard which could, in turn, make the same conduct that was not actionable under Delaware law actionable under the contract.

[124]  Adv. D.I. 10, ¶ 27; Adv. D.I. 15, ¶ 5.

[125]  The Court is not addressing the Enhanced Scrutiny Test or the Entire Fairness Standard in detail because the Trustee has pled absolutely no facts to show that the Parent Defendants' motivations with respect to the X7 Acquisition were selfish or unreasonable in relation to their objective under the Enhanced Scrutiny Test, nor has the Trustee pled any facts whatsoever to show that Parent Defendants were on both sides of the Acquisition to support review under the Entire Fairness Test.  In addition, the Trustee does not dispute that the Defendants are not subject to review under the Enhanced Scrutiny Test or the Entire Fairness Standard.

## 2. *Claim for Breaches of Duties Against All Defendants*[126]

Count Two of the Trustee's Complaint sets forth a Claim against all the Defendants for their alleged breach of the duty of care regarding their alleged failure to take adequate steps to address known problems at X7 post-acquisition.[127]   Specifically, the Trustee contends that the Defendants failed to inform themselves fully of the extent of X7's underestimated customer contracts, which were its primary source of revenue.[128] Allegedly, such failure was grossly negligent and lead to X7 continuing to enter into such underestimated contracts, causing them to lose money by fulfilling the contracts.[129]

### a. *Breach of Duty of Care*

As discussed previously, the breach of duty of care requires a showing of gross negligence.   To summarize my previous explanation *supra*,  in order to establish gross negligence, "a plaintiff must plead … that the defendant was 'recklessly uniformed' or acted 'outside the bounds of reason.'"[130]   "The exact behavior that will constitute gross

---

[126] A Claim for breach of duty of loyalty and good faith warrants no further discussion.   Identical to the Court's analysis regarding the Trustee's failure to allege such Claims against the Parent Defendants, the Trustee offers absolutely no factual support with respect to a Claim for the breach of duty of loyalty or good faith against all Defendants.   Accordingly, the Trustee has failed to state such Claims against all Defendants.

[127] Adv. D.I. 10, ¶ 57.

[128] *Id*. at ¶ 3.

[129] *Id*. at ¶ 4.

[130] *A & J Capital, Inc. v. Law Office of Krug*, No. CV 2018-0240-JRS, 2019 WL 367176, at *12 (Del. Ch. Jan. 29, 2019), *judgment entered sub nom. Capital, Inc. v. Law Office of Krug* (Del. Ch. 2019) (footnote omitted) (*quoting In re Synutra Int'l, Inc.*, No. 2017-0032-JTL 2018 WL 705702, at *5 (Del. Ch. Feb. 2, 2018) (ORDER) (citations omitted)).   *Accord McPadden v. Sidhu*, 964 A.2d 1262, 1274 (Del. Ch. 2008) ("Delaware's current understanding of gross negligence is conduct that constitutes reckless indifference or actions that are without the bounds of reason.").

negligence varies based on the situation, but generally requires directors and officers to fail to inform themselves fully and in a deliberate manner."[131]

The Trustee alleges that subsequent to the X7 Acquisition, the Defendants failed to ensure that client contracts would be properly estimated on a going-forward basis, resulting in X7 losing money by fulfilling their contracts.[132]  The Complaint contains facts showing that, shortly after the Acquisition, Defendants learned that X7 was paying more to purchase equipment for contracts than what they were charging to clients, and that over $1 million of X7's contracts were underestimated.[133]   However, when Officer Defendant Taylor was removed as CEO of X7 in 2014, the company had learned that a material portion of the contracts he had negotiated were still incorrectly estimated and quoted.[134]

Such facts give rise to a reasonable inference that the Defendants failed to fully inform themselves as to the extent of the underestimated contracts, which is especially concerning because they were aware of X7's shaky financial condition prior to the Acquisition via the Grant Thornton Report.  Thus, the Trustee has sufficiently pled that the Defendants were grossly negligent in their actions after the X7 Acquisition.

---

[131] *Fedders*, 405 B.R. at 539 (*citing Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 368 (Del. 1993)).

[132] Adv. D.I. 10, ¶ ¶ 41, 51.

[133] *Id*. at ¶ 38.

[134] *Id*. at ¶¶ 58-61.

The Court finds that the Trustee has met its pleading burden with respect to a showing of gross negligence in order to sufficiently plead a Claim for breach of duty of care against all Defendants regarding their actions taken post X7 Acquisition.

In sum, the Court will deny the Defendants' Motion with respect to Count Two of the Complaint.

### C.    The SDI LLC Agreement's Exculpatory Clause

The Defendants' argue that the Exculpatory Clause in the SDI LLC Agreement bars the Trustee's Claims against them for breach of duties.[135]  On the other hand, the Trustee disputes this argument and asserts that the SDI LLC Agreement only applies to the Parent Defendants, and nonetheless, argues that a showing of gross negligence obviates the Exculpatory Clause.[136]

Under Delaware law, "the proper interpretation of language in a contract is a question of law."[137]  "Accordingly, a motion to dismiss is proper framework for determining the meaning of contract language."[138]  When interpreting a contract, the Court gives priority "to the parties' intentions as reflected in the four corners of the agreement."[139]  In upholding the intentions of the parties, a court must "construe the agreement as a whole, giving effect to all provisions therein."[140]  The Court must

---

[135]  Adv. D.I. 15, ¶ 23.

[136]  Adv. D.I. 21, ¶¶ 3, 27.

[137]  *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1028 (Del. Ch. 2006).

[138]  *Id.* (*citing OSI Systems, Inc. v. Instrumentarium Corp.*, 892 A.2d 1086, 1090 (Del.Ch.2006)).

[139]  *GMG Capital Investments, LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012) (*citing Paul v. Deloitte & Touche*, LLP, 974 A.2d 140, 145 (Del. 2009) (citations omitted)).

[140]  *Id.*  at 779.

"interpret clear and unambiguous terms according to their ordinary meaning."[141]  "'A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction.'"[142]  Only where the contract's language is "susceptible of more than one reasonable interpretation may a court look to parol evidence; otherwise, only the language of the contract itself is considered in determining the intentions of the parties."[143]  "When the language of a contract is clear and unequivocal, a party will be bound by its plain meaning."[144]

### 1. *Applicability to Defendants Taylor and Garver*

At the outset, it is important to note that the Exculpatory Clause does not apply to Officer Defendants Taylor and Garver:

> Except in the case of bad faith, fraud, gross negligence, or willful misconduct, no **Manager** … shall be liable … for damages for any act taken or omissions by such **Manager** in connection with this Agreement or the conduct of business of the Company or any of its Subsidiaries. Notwithstanding any other provision of this Agreement to the contrary, in accordance with Section 18-1101(c) and (e) of [the Delaware Limited Liability Company] Act, the fiduciary duties of each Manager and Member are eliminated to the fullest extent permissible by the [Delaware Limited Liability Company] Act; provided, that nothing contained in this Agreement shall eliminate the implied covenant of good faith and fair dealing.[145]

---

[141]  *Id.* at 780 (*citing Paul v. Deloitte & Touche*, LLP, 974 A.2d 140, 145 (Del. 2009) (citations omitted) and *Rhone–Poulenc Basic Chem. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del.1992)).

[142]  *Id.* (*quoting Rhone–Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992)).

[143]  *Allied Capital Corp.*, 910 A.2d at 1030 (*citing Citadel Holding Corp., v. Roven*, 603 A.2d 818, 822 (Del. 1992); *Eagle Industries, Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997)).

[144]  *Id.* (*citing Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006)).

[145]  Adv. D.I. 15, Exh. 1, ¶ 7.3.

The SDI LLC Agreement unambiguously limits the liability of the company's managers with no reference to the company's officers.[146]  The SDI LLC Agreement defines "Managers" as "each Person who is a member of the Board of Managers pursuant to Article VII."   In contrast, "Officers" are referred to in Section 7.8, which provides that "Officers" are appointed by the "Board of Managers."[147]

Logically, "Officers" are not considered "Managers" for purposes of the SDI LLC Agreement. If "Officers" and "Managers" were one of the same, "Officers" would not be appointed by "Managers."   Therefore, the term "Manager" only has one possible interpretation, and the Parties are bound by its plain meaning.   Consequently, the Trustee properly asserts that the Exculpatory Clause applies only to "Managers," and not "Officers."[148]

Accordingly, Count Two of the Complaint against All Defendants setting forth a Claim for a breach of the duty of care is not barred by the Exculpatory Clause against Officer Defendants Taylor and Garver.[149]

---

[146] *Wenske v. Blue Bell Creameries, Inc.*, No. CV 2017-0699-JRS, 2018 WL 3337531, at *10 (Del. Ch. July 6, 2018), *reargument denied*, No. CV 2017-0699-JRS, 2018 WL 5994971 (Del. Ch. Nov. 13, 2018) ("Under Delaware law, contracts must be construed in accordance with their terms to give effect to the parties' intent … when interpreting contractual language, the court must ascertain what a reasonable person in the position of the parties at the time of contracting would have thought that language meant. In that regard, the interpreting court will give words their plain meaning unless it appears that the parties intended a special meaning" (internal quotation marks, footnotes and citations omitted)).

[147] Adv. D.I. 15, Exh. 1, ¶ 7.8.

[148] Adv. D.I. 10, ¶ 55.

[149] As discussed *supra*, the Trustee failed to state a Claim for a breach of the duty of loyalty and duty of good faith against all Defendants in Count Two.  Notwithstanding the Trustee's failure to do so, the Exculpatory Clause would not bar such Claims against Officer Defendants as the Clause is not applicable towards them.

## 2. *Applicability to Defendants Stienes, Levenberg, and Baker*

As discussed *supra*, the Trustee has failed to adequately plead gross negligence in order to state a Claim in Count One against the Parent Defendants for a breach of the duty of care with respect to their decision to acquire X7.  Likewise, the Trustee has also failed to state a Claim against the Parent Defendants for a breach of loyalty and a breach of good faith in Count One.  For that reason, the inquiry is whether the Exculpatory Clause bars the Trustee's Claim for a breach of the duty of care in Count Two against the Parent Defendants.[150]

Delaware law, specifically, the Delaware Limited Liability Company Act (the "Act"), permits the members of a limited liability company to adopt provisions in its operating agreement that alter the default fiduciary duties.  Section 1101(e) of the Act allows the following:

> A limited liability company agreement may provide for the limitation or elimination of any and all liabilities for breach of contract and breach of duties (including fiduciary duties) of a member, manager, or other person to a limited liability company or to another member or manager or to another person that is a party to or is otherwise bound by a limited liability company agreement, provided, that a limited liability company agreement may not limit or eliminate liability for any act or omission that constitutes a bad faith violation of the implied covenant of good faith and fair dealing.[151]

---

[150]  The Trustee failed to state a Claim against all - but for relevant purposes - Parent Defendants, for a breach of the duty of loyalty and the duty of good faith in Count Two because the Complaint is entirely devoid of facts supporting such Claim, and *infra* because the plain language of the SDI LLC Agreement eliminates the Parent Defendants' fiduciary duties of loyalty and good faith.

[151]  6 *Del. C.* § 18–1101(e).

Thus, according to Section 1101(e) of the Act, "the drafters of a limited liability company can leave the default duties in place, but limit or eliminate monetary liability for breach of duty."[152]

Section 1101(c) of the Act is something entirely different.  That section of the Act provides:

> To the extent that, at law or in equity, a member or manager or other person has duties (including fiduciary duties) to a limited liability company or to another member or manager or to another person that is a party to or is otherwise bound by a limited liability agreement, the member's or manager's or other person's duties may be expanded or restricted or eliminated by provisions in the limited liability company agreement; provided, that the limited liability company agreement may not eliminate the implied contractual covenant of good faith and fair dealing.[153]

This Section of the Act "empowers the drafters of a limited liability company to expand, restrict, or eliminate a member or manager's duties, including fiduciary duties."[154]

The SDI LLC Agreement tracks the language of 18-1101(e) of the Act.[155]  However, the SDI LLC Agreement also incorporates 18-1101(c); the Agreement unambiguously states, in pertinent part:

> **The duty of care of each Manager** in the performance of such … duties … is limited to the performance of such duties in good faith and with that degree of care that an ordinarily prudent Person in a like position would use under similar

---

[152] *Feely v. NHAOCG, LLC*, 62 A.3d 649, 663 (Del. Ch. 2012).

[153] 6 Del. C. § 18–1101(c).

[154] *Feely*, 62 A.3d at 663.

[155] Adv. D.I. 15, ¶ 22.

circumstances ….Except in the case of bad faith, fraud, **gross negligence** or willful misconduct … no Manager … shall be liable to the Company or any Member for damages for any act taken or omissions by such Manager in connection with this Agreement or the conduct of the business of the Company or any of its Subsidiaries. **Notwithstanding any other provision of this Agreement to the contrary**, in accordance with Section 18-1101(c) and (e) of the Act, the fiduciary duties of each Manager … are eliminated to the fullest extent permissible by the Act….[156]

The plain language of the SDI LLC Agreement does several things: (1) imposes a contractual duty of care upon the managers, i.e. the Parent Defendants, to act with a degree of care that an ordinarily prudent person in a similar situation would use; (2) limits the Parent Defendants' liability for breaches of the duty of care except in cases of bad faith, fraud, gross negligence, or willful misconduct; and (3) notwithstanding the contractual duty of care, which is explicitly recognized and provided for in the Agreement, eliminates the Parent Defendants fiduciary duties, including the fiduciary duties of loyalty and good faith.[157]

Clearly, the plain language of the SDI LLC Agreement establishes that the grant of exculpation will not extend to instances in which the act or omission of a manager is attributed to bad faith, fraud, gross negligence, or willful misconduct. It has already been established *supra*, that the Trustee adequately plead that all of the Defendants were grossly negligent by way of failing to inform themselves fully as to the extent of X7's underestimated customer contracts, causing the company to continue to enter into such

---

[156] *Id.*, Exh. 1, ¶ 7.3.

[157] Once again, for clarity, the Trustee failed to state a Claim against the Parent Defendants for a breach of the duty of loyalty and good faith. However, even if the Complaint adequately plead facts to state such a Claim, it would be barred by the SDI LLC Agreement.

underestimated contracts.    Accordingly, the Exculpation Clause does not bar the Trustee's Claim in Count Two against the Parent Defendants for a breach of the duty of care with respect to their actions post-acquisition.

## CONCLUSION

As a result, the Court will grant the Defendant's Motion as to Count One of the Complaint and deny the Motion with respect to Count Two of the Complaint.  An order will be issued.